UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-cv-62187-WPD

TONY SYFFRAD, as Personal Representative
of the Estate of Barry Gedeus,

    Plaintiff,

v.

CITY OF FORT LAUDERDALE and
ROBERT MORRIS, in his individual capacity,

    Defendants.
_____/

**DEFENDANT CITY OF FORT LAUDERDALE'S MOTION
TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

    Defendant, CITY OF FORT LAUDERDALE ("City"), by and through its undersigned counsel and pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, and Southern District Local Rule 7.1, hereby moves this Court to dismiss Plaintiff's Third Amended Complaint (DE 48) and in support thereof states as follows:

    1.    Plaintiff alleges in his Third Amended Complaint that on March 8, 2020 at approximately 9:00 p.m., Defendant, ROBERT MORRIS ("Officer Morris"), an officer with the Fort Lauderdale Police Department, was dispatched in response to a sexual battery call just taking place and, along with other officers and Broward County Sheriff's Office (BSO) deputies, began searching for individuals who fit the "Be on the Look Out" ("BOLO") description: an unarmed, 35-year-old Black male, wearing a black shirt, black pants, dreadlocks, with a black bicycle. (DE 48, ¶¶ 6, 12-13).

    2.    Plaintiff further alleges that at that time, the decedent, BARRY GEDEUS ("Gedeus"), was in the area leisurely riding his bicycle on the way home when he was struck by Officer Morris' patrol vehicle, which was turning at an intersection that Gedeus was reaching at the same time. (*Id.*, ¶¶ 14-15).

1

3. Plaintiff alleges that Gedeus, "in mortal fear," rapidly moved away with his bicycle in hand, but as he reached the back of the patrol vehicle, Officer Morris ordered Gedeus to turn around and walk toward him. (*Id.*, ¶ 17). Plaintiff further alleges that Officer Morris then violently grabbed Gedeus' bicycle and Gedeus, "confused and afraid," dropped his bicycle and ran toward other FLPD officers and BSO deputies. (*Id.*, ¶ 18).

4. Plaintiff alleges that Officer Morris initially stumbled over the bicycle, but then regained balance and immediately chased after and shot Gedeus, who was unarmed. (*Id.*, ¶¶ 19, 21). Plaintiff alleges that Gedeus died after sustaining at least ten (10) bullet wounds to the body, three (3) of which were in his back. (*Id.*, ¶ 22).

5. Based on such allegations, Plaintiff has asserted an excessive force claim under 42 U.S.C. § 1983 (Count I) and a state law battery claim (Count II) against Defendant, Officer Morris, which claims are not part of this Motion.

6. As to the Defendant, City, Plaintiff's Third Amended Complaint alleges an excessive force claim under 42 U.S.C. § 1983 (Count III) and state law claims for negligent training (Count IV) and battery (Count V), pursuant to Florida's Wrongful Death Act, §§ 768.16 - 768.26, Fla. Stat.

7. Similar to the Second Amended Complaint, Plaintiff's claims against the City in the Third Amended Complaint should be dismissed. As to the § 1983 claim asserted in Count III, Plaintiff has still failed to state a claim upon which relief can be granted, as the allegations in Count III are conclusory and do not establish a policy, practice, or custom on the part of the City that was the moving force behind the alleged constitutional violation.

8. Plaintiff's state law claim against the City for negligent training (Count IV) should likewise be dismissed, because the negligent training claim is barred by sovereign immunity and because Count IV fails to state a claim upon which relief can be granted for negligent training. Moreover, the negligent training claim should be dismissed with prejudice because further attempts at amendment would be futile as Plaintiff is challenging discretionary government functions for which the City is clearly entitled to sovereign immunity.

9. In light of the grounds for dismissing the other claims asserted against the City, the Court should decline to exercise supplemental jurisdiction over the remaining state law battery claim against the City in Count V. Alternatively, the City would request an extension of time to

file a responsive pleading to Count V until the Court has ruled on the instant Motion to Dismiss, for the sake of judicial economy and in order to maintain clarity of the pleadings.

10. For the foregoing reasons, discussed in more detail in the below Memorandum of Law, which is incorporated herein by reference, Plaintiff's Third Amended Complaint against the City should be dismissed.

## MEMORANDUM OF LAW

### I. Standards for Pleading and Dismissal

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . …" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). When determining whether a claim has facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

However, the Court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). A plaintiff's complaint must be dismissed if the facts alleged "have not nudged [its] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### II. Count III of the Third Amended Complaint Fails to State a Claim Against the City Under 42 U.S.C. § 1983.

A municipality such as the City may be held liable under § 1983 only when the constitutional deprivation was undertaken pursuant to a policy or custom; respondeat superior is not an appropriate basis for suit. *Pembaur v. Cincinnati*, 475 U.S. 469, 478-81 (1986); *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 694 (1978). "[R]ecovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur*, 475 U.S. at 480. Thus, a plaintiff wishing to recover under § 1983 must properly allege: (1) a policy or custom; or (2) a failure to train or supervise, arguably a kind of policy or custom claim.

A municipal act rising to the level of a policy or custom can be established in one of three ways: (1) an express policy, (2) a widespread practice that is so well-settled and permanent as to constitute a custom, or (3) the act or decision of an official with final policymaking authority. *Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 966-68 (11th Cir. 2002). A policy or custom has been further defined as a "deeply imbedded traditional way[ ] of carrying out policy," *Fundiller v. Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985), or the tacit authorization or display of deliberate indifference towards police misconduct, *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) (citation omitted). The "official policy or custom must be the moving force of the constitutional violation in order to establish liability of a government body under [Section] 1983." *Gilmere v. City of Atlanta*, 737 F.2d 894, 901 (11th Cir. 1984). A single instance of unconstitutional behavior alone cannot establish proof of the policy itself. *Craig v. Floyd City, Ga.*, 643 F.3d 1306, 1311 (11th Cir. 2011).

Section 1983 liability for failure to train or supervise will only be imposed on a municipality where the municipality "inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)). Failure to train or supervise is only a policy when deliberate indifference is evidenced. *City of Canton*, 489 U.S. at 388. To establish deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold*, 151 F.3d at 1350. "[S]howing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability." *Connick v. Thompson*,

563 U.S. 51, 68 (2011). Moreover, the "identified deficiency in a city's training program must be closely related to the ultimate injury." *City of Canton*, 489 U.S. at 391.

In Count III of the Third Amended Complaint, Plaintiff attempts to assert a § 1983 claim against the City for excessive force. (DE 48, p. 18). The Court has rejected Plaintiff's two prior attempts to assert a § 1983 claim against the City, granting the City's motions to dismiss the Amended Complaint and Second Amended Complaint. (*See* DE 39, 47). Although Plaintiff has added some new allegations in the Third Amended Complaint, the new allegations do not cure the deficiencies identified in the Court's prior orders. Accordingly, Plaintiff's § 1983 claim against the City, set forth in Count III of the Third Amended Complaint, should again be dismissed because Plaintiff has failed to allege facts that state a claim upon which relief can be granted.

Many of the preliminary allegations incorporated into Count III by reference (DE 48, ¶ 82) were already asserted in Plaintiff's prior, Second Amended Complaint (DE 43), and many of those same allegations were also asserted in Plaintiff's earlier Amended Complaint. The City has already addressed such insufficient allegations in detail in its prior motions to dismiss and replies in support thereof (DE 14, 18, 43, 45), and the City incorporates herein by reference its arguments therein that responded specifically to the allegations that Plaintiff has merely restated in the Third Amended Complaint. Moreover, the Court has already found that such allegations were insufficient to state a claim against the City under § 1983. (DE 39, 47). Therefore, this Motion will focus on the new allegations raised in the Third Amended Complaint.

The new preliminary allegations are contained in paragraphs 24 (including sub-paragraphs a.-q.), 38, 43, 50-51, and 54 of the Third Amended Complaint. Those allegations do not establish a policy, custom, or practice by the City that was the moving force behind the alleged constitutional violation—namely, Officer Morris' alleged shooting of Gedeus—either alone or in conjunction with all of the allegations from the Second Amended Complaint that are repeated in the Third Amended Complaint.

The bulk of the new factual allegations in the Third Amended Complaint are set forth in paragraph 24 and its subparagraphs a. through q. In paragraph 24, Plaintiff alleges that Officer Morris had been employed by the City since 2006 "and has a known history of unlawful use of force." Plaintiff alleges that the City Police Department and City officials "knew that" and then recites a laundry list of alleged incidents involving use of force by Officer Morris, set forth in the numerous subparagraphs. Almost all of those subparagraphs were included, verbatim, in

5

Plaintiff's response to the City's motion to dismiss the Second Amended Complaint. (*See* DE 44, pp. 8-11). Despite the number of these new allegations and their factual details, however, none of the allegations establish or even suggest that the force used by Officer Morris in such instances was excessive. Moreover, none of the alleged instances involve even remotely similar facts to the incident that is the subject of Plaintiff's claim in this case.

For example, in the only alleged shooting incident, Plaintiff alleges that as a driver turned toward Officer Morris, Officer Morris "saw what he believed to be a firearm in the driver's hand and in response Officer Morris fired his firearm four times, killing the driver." (DE 48, ¶ 24.a.). While Plaintiff also alleges that Officer Morris was not disciplined for this incident (*id.*), Plaintiff does not allege that the incident was not reviewed or that the force Officer Morris used in response to what he believed was a suspect turning toward him holding a firearm was excessive. Almost all of the other incidents alleged in the paragraph 24 subparagraphs involve Officer Morris either deploying a K-9 or employing physical compliance techniques on suspects who were failing to comply with officers' commands and physically resisting being detained. Although Plaintiff alleges with respect to many of the examples that "Officer Morris was not disciplined nor was a determination made as to whether he violated City policies and procedures," Plaintiff does not allege that the force used in any of the instances was excessive and does not allege facts demonstrating that the force used in any of the instances was excessive. Moreover, none of the incidents alleged by Plaintiff are even remotely similar to the facts of this case or involve similar complaints. *See Banuchi v. City of Homestead*, No. 20-25133-Civ-Scola, 2021 WL 2333265, at *4 (S.D. Fla. June 8, 2021) ("Random acts, isolated incidents, or *dissimilar complaints are insufficient to establish a custom or policy*. … In order to survive dismissal on each § 1983 claim against the City, then, [the plaintiff] must allege other incidents, occurring on a widespread basis, *involving factual situations that are substantially similar to the facts alleged in this case*.") (emphasis added); *Ayton v. Orange Cnty. Sheriff Dep't*, No. 6:10-CV-1930-ORL-28, 2012 WL 4711911, at *3 (M.D. Fla. Oct. 3, 2012) ("A list of complaints against police officers, without more, is insufficient to create an issue of fact regarding [a municipality's] policy of inadequately investigating or disciplining its police officers. Rather, the Plaintiff must present at least some evidence from which a reasonable jury could infer the complaints were meritorious.") (citation omitted); *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) (plaintiffs did not demonstrate that past complaints of police misconduct had any merit, and the number of complaints bears no

6

relation to their validity, particularly for officers who patrol a high crime area); *accord Strauss v. City of Chicago*, 760 F.2d 765, 769 (7th Cir. 1985) (noting that "the number of complaints filed, without more, indicates nothing" and that "[p]eople may file a complaint for many reasons, or for no reason at all.").

Paragraph 38 alleges that "[b]ased on the above listed incidents, the number of use of force reports is higher since Officer Morris failed on multiple occasions to report his use of force during a citizen encounter, of which the City was aware of." For the reasons discussed above with respect to paragraph 24 and its sub-paragraphs, "the above listed incidents" are dissimilar from the alleged incident in this case, and Plaintiff's emphasis on the number of use of force reports or even the number of times force is used and not reported does not establish a policy or custom with respect to excessive force. Plaintiff continues to conflate the mere *use of force* (which is irrelevant for purposes of Plaintiff's *Monell* claim) with *excessive force*.

Paragraph 43 alleges that "[b]y custom and practice, Defendant City is aware that a pattern of constitutional violations exists by way of use of excessive force, and nevertheless, fails to provide adequate training, thereby being deliberately indifferent to the constitutional violations." This allegation is conclusory; the assertion that a pattern of constitutional violations by use of excessive force existed is not supported by underlying factual allegations for the reasons discussed above. The allegation that the City "fails to provide adequate training, thereby being deliberately indifferent" is equally conclusory and insufficient. *See Cooper v. City of Starke, Fla.*, No. 3:10-cv-280-J-34MCR, 2011 WL 1100142, at *8 (M.D. Fla. Mar. 23, 2011) ("[W]ith respect to Plaintiffs' allegation that the City failed to train and/or supervise the officers, Plaintiffs do not offer any *facts* demonstrating how the training was inadequate or that the need for additional training was obvious. As previously discussed, Plaintiffs' general allegation that a pattern of abuse existed is insufficient to satisfy the standards of *Twombly* and *Iqbal*.").

Paragraphs 50 and 51 pertain to an alleged 2006 opinion issued by the City narrowing the scope of the Citizen Police Review Board "by limiting it to complaints filed by the public and not to investigations started internally, which can arise from shootings, police chases, car accidents, or other matters." (DE 48, ¶ 50). Paragraph 51 further alleges that the Citizen Review Board only meets when the internal affairs investigation is completed and that the board must rely on internal affairs to receive complaints and asserts that "[i]n recent years, the board has sparingly met and reviewed a small number of cases for a police department that is riddled with corruption." (*id.*, ¶

51).  The scandalous allegation that the police department "is riddled with corruption" is wholly conclusory and not supported by any underlying facts, and Plaintiff has not alleged any facts demonstrating how the allegations related to the Citizen Review Board reflect a policy, custom, or practice that was the moving force behind the alleged constitutional violation in this case.

Paragraph 54 alleges that "Officer Morris' prior acts should have alerted the City that he was probative to commit constitutional violations; especially, constitutional violations related to the use of excessive force."  It is unclear what the allegation that Officer Morris "*was probative to commit constitutional violations*" (emphasis added) means, but in any event, as discussed above, Plaintiff has not alleged facts supporting his conclusory assertions of prior constitutional violations or excessive force by Officer Morris.  Plaintiff's recitation of incidents in which Officer Morris used force do not establish or imply that the force used in such incidents was excessive.

Turning to the allegations within the body of Count III itself, many of those allegations are merely restated from the Second Amended Complaint (DE 48, ¶¶ 83-92, 96-105), and the Court found such allegations insufficient to state a claim against the City under § 1983.  (DE 47, pp. 4-10).  The City has already addressed such insufficient allegations in detail in its prior motions to dismiss and replies in support thereof (DE 14, 18, 43, 45), and the City incorporates herein by reference its arguments therein that responded specifically to the allegations that Plaintiff has merely restated in the Third Amended Complaint.  Therefore, this Motion will focus on the new allegations raised within Count III.

The allegations within the body of Count III that are new to the Third Amended Complaint (DE 48, ¶¶ 93-95) are irrelevant or conclusory and still do not state a § 1983 claim against the City.  Paragraph 93 alleges that the City "has knowledge of the constitutional violations of the Northwest Raiders ('NW Raiders') and its members," that "[c]itizens have lodged a myriad of complaints against the NW Raiders," and that "[m]embers of the community and local organizations have complained of the NW Raiders' illegal conduct, but *few complaints have been sustained*." (emphasis added).  Plaintiff does not tie these stand-alone allegations about the NW Raiders to any other allegations or allege that Officer Morris was part of that group.  In addition, Plaintiff does not allege facts establishing any actual constitutional violations or illegal conduct by this group, but merely asserts that many community members and organizations have complained about their conduct, conceding that few of those complaints have been sustained.  Such allegations do not

support the existence of a City policy or custom that was the moving force behind the alleged constitutional violation.

Paragraph 94 contains essentially the same allegations at paragraph 50, which concerns the City alleging narrowing the scope of the Citizen Review Board in 2006, the substance of which is already addressed above. There is little factual context for these allegations, which do not support the existence of a City policy or custom sufficient to impose § 1983 liability against the City in any event.

Paragraph 95 merely asserts the conclusion that "Defendant City acted in a manner consistent with a *de facto* policy, practice, and/or custom of a 'code of silence' and 'blue shield' when it failed to investigate the truth of the matters asserted by its officers in their use of force disclosures." This allegation is along the same lines is Plaintiff's other conclusory allegations regarding *de facto* policies, practices, and customs. The Court rightly found such allegations are conclusory (DE 47, p. 9), and paragraph 95 in the Third Amended Complaint suffers from the same malady.

Overall, Plaintiff's allegations in Count III (both the prior allegations and the new ones) are very similar to those in *Banuchi v. City of Homestead*, No. 20-25133, 2021 WL 2333265 (S.D. Fla. June 8, 2021). In that case, the plaintiff alleged that the city had a number of unofficial customs or practices, falling, more or less, into three general categories: (1) insufficient investigations or processing of complaints of officer misconduct; (2) inadequate recordkeeping; and (3) maintenance of a "code of silence" among city officers. *Id.* at *5. According to the plaintiff, such practices resulted in the decedent's shooting death. *Id.* The Court agreed with the city's argument in its motion to dismiss that, despite summarily identifying a long list of what the plaintiff described as "de facto policies, practices and/or customs," the plaintiff failed to set forth any actual factual allegations establishing that the city had a widespread pattern and practice of inadequately handling police misconduct complaints, insufficient recordkeeping, or an improper "code of silence." *Id.* The Court elaborated as follows:

> [T]he vast majority of Banuchi's allegations are comprised of vague and conclusory assertions, devoid of factual support. For example, Banuchi lists dozens of "de facto policies, practice, and/or customs" … but provides no factual support that would establish the necessary widespread and persistent practice required for municipal liability. Similarly, Banuchi's vague claims that "complaints have been lodged against … Green for excessive force … and other misconduct" … are both factually unsupported and, in any event, insufficient. Banuchi provides no context

9

> for the "complaints": Who submitted them? When were they submitted? To whom were they submitted? How many were there? What did they say? Further, even if Banuchi had set forth facts supporting the existence of the alleged complaints, *she fails to allege whether the complaints were ever substantiated in any way*. Lastly, her reference to Green having "used deadly force against three others and excessive force not resulting in death against a forth" … is also conclusory and vague: *missing is any allegation that the deadly force was improper or any facts showing that the force, against the fourth person, was actually excessive. Banuchi's summarily labeling it as excessive, is simply not enough*.

*Id.* (emphasis added). Plaintiff's allegations in Count III of the Third Amended Complaint suffer from the same deficiencies described above. Accordingly, Plaintiff's § 1983 claim in Count III should be dismissed, as was the plaintiff's claim in *Banuchi*. *See id.* at *6.; *see also Reyes v. City of Miami Beach*, No. 07-22680-CIV, 2008 WL 686958, at *12-14 (S.D. Fla. Mar. 13, 2008) (dismissing § 1983 claim involving similar allegations that the city approved of a police "code of silence").

The Eleventh Circuit has also affirmed dismissal of a § 1983 claim with allegations similar to the gist of Plaintiff's allegations in this case in *Marantes v. Miami-Dade County*, 649 Fed. Appx. 665 (11th Cir. 2016), stating:

> Marantes has not cited a policy directly encouraging excessive force; rather, he contends that the Miami-Dade County Police Department's internal affairs process is ineffective, which in turn sends an implicit message to police officers that they can abuse civilians without punishment. Marantes has pointed to only one incident, however, to show that the internal affairs process was ineffectual by custom—his own experience. And, even broadly construing the amended complaint, he has cited only two incidences of alleged excessive force—his arrest and a homicide involving the same set of officers who arrested him. These allegations do not show that the County had a "longstanding and widespread practice" of encouraging excessive force. … Nor do they show that the alleged custom was the "moving force" behind Officer Giordano kicking Marantes's head and body. … The district court properly dismissed the *Monell* claim.

*Id.* at 673.

Plaintiff's conclusory allegations as to custom and policy in Count III are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *See Watts v. City of Hollywood*, 146 F. Supp. 3d 1254, 1272 (S.D. Fla. 2015) (stating that "naked, conclusory assertion" of a policy or custom "is supported by no more than the allegations of the four instances of improper DAVID access by City employees" and that "[t]his is not enough to satisfy the pleading standard on a Rule 12(b)(6) motion to dismiss, as Watts is required to allege specific facts detailing a widespread policy or

custom, not just a couple of incidents and a conclusory assertion."). As the *Watts* Court noted, "[i]t is well known municipal liability under section 1983 is hard to establish. The test is purposefully difficult, lest a loosening of the standard effectively created a *respondeat superior* regime of liability—something *Monell* and its progeny expressly sought to avoid." *Id.* at 1273. In sum, Plaintiff fails to raise his § 1983 claim against the City in Count III above the speculative level, *see Hargis v. City of Orlando*, No. 6:12-CV-723-Orl-37KRS, 2012 WL 6089715, at *5 (M.D. Fla. Dec. 7, 2012), and the claim should be dismissed.

### III. Count IV of the Third Amended Complaint Fails to State a Negligent Training Claim Upon Which Relief Can Be Granted.

In Count IV, Plaintiff attempts to assert a state law claim against the City for negligent training. Plaintiff's negligent training claim should be dismissed because it fails to state a claim upon which relief can be granted. "Under Florida law, an employer is liable in tort for reasonably foreseeable damages resulting from the negligent training of its employees and agents." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1265 (11th Cir. 2001) (citation omitted). Negligent training occurs when an employer "was negligent in the implementation or operation of the training program." *Gutman v. Quest Diagnostics Clinical Labs., Inc.*, 707 F. Supp. 2d 1327, 1331 n.4 (S.D. Fla. 2010) (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005)). Thus, "[t]o survive a motion to dismiss, [Plaintiff] must adequately plead the City 'was negligent in the implementation or operation of [a] training program. [He] cannot merely challenge the content of the program.'" *Watts v. City of Hollywood*, 146 F. Supp. 3d 1254, 1269 (S.D. Fla. 2015) (quoting *Mercado*, 407 F.3d at 1162)) (alterations modified). In addition, as with other negligence claims, a negligent training claim may only proceed if such negligence caused the plaintiff's injury. *See Doe v. NCL (Bahamas) Ltd.*, No. 1:16-CV-23733-UU, 2016 WL 6330587, at *4 (S.D. Fla. Oct. 27, 2016); *see also Gutman*, 707 F. Supp. 2d at 1332; *Wynn v. City of Lakeland*, 727 F. Supp. 2d 1309, 1317 (M.D. Fla. 2010).

Plaintiff's allegations regarding training are sparse, often conclusory, and concern the subject matter and content of training, not the implementation or operation of an identified, existing training program. For example, in one of the preliminary allegations new to this version of Plaintiff's complaint, Plaintiff asserts the conclusion that the City "is aware that a pattern of constitutional violations exists by way of use of excessive force, and nevertheless, fails to provide adequate training, thereby being deliberately indifferent to the constitutional violations." (DE 48,

11

¶ 43). In another preliminary allegation, which also appeared in both the First Amended Complaint and Second Amended Complaint, Plaintiff alleges that "[u]pon information and belief, FLPD failed to adequately train Defendant Morris in how to properly apprehend an individual without the use of deadly force when the individual is not posing a risk of great bodily harm to the Officer or the community at large, and who is unarmed."[1] (DE 48, ¶ 60). That allegation clearly refers to the content and subject matter of FLPD training, not its implementation or operation.

   Within Count IV itself, Plaintiff alleges that the City "breached its duty by failing to provide adequate training and by failing to adhere to its agency review procedures" in various ways (*id.*, ¶ 108), which were previously alleged in the Second Amended Complaint (DE 41, ¶ 102), including by "[f]ailing to meaningfully train and/or discipline officer with respect to the appropriate use of force during police-citizen encounters and the proper reporting of incidents that involved the use of force." Plaintiff further alleges in Count IV: that the City failed "to provide adequate training in the proper use and activation of BWC" (DE 48, ¶ 110); that the City failed "to provide adequate training to its police officers relative to the amount of force needed to apprehend an unarmed civilian" (*id.*, ¶ 113); and that City police officers "fail to have the adequate training relative to the amount of force needed to apprehend an unarmed civilian" (*id.*). Such allegations also refer to the content and subject matter of FLPD training. Plaintiff simply does not identify an existing training program or training policy and explain how the City was negligent in implementing it. *See Goosby v. Branch Banking & Tr. Co.*, No. 17-23419-CIV, 2017 WL 10442008, at *6 (S.D. Fla. Dec. 20, 2017) (dismissing negligent training claim where plaintiff "proffer[ed] conclusory allegations that do not suffice").

   Moreover, even if Plaintiff had alleged negligence in the implementation or operation of an identified City training program, Plaintiff has not alleged facts establishing that the City was on notice of prior issues concerning Officer Morris for which training was necessary to prevent foreseeable harm. Although Plaintiff alleges the conclusion that the City "was placed on notice of prior issues concerning Officer Morris' use of excessive force against citizens, as detailed above" (DE 48, ¶ 111), the prior allegations in the Third Amended Complaint only discuss instances of Officer Morris using force and Plaintiff's conclusory characterization that such uses of force were excessive. There are no allegations actually establishing that Officer Morris used excessive force

---

[1] The concluding clause, "and who is unarmed," was not included in the prior versions of the complaint, but the addition of this clause is immaterial for purposes of this Motion.

on prior occasions or that the City was aware of a history of excessive force use by Officer Morris. The conclusory allegations in paragraphs 113 and 115 suffer from the same problem. Such allegations are insufficient. *See Banuchi v. City of Homestead*, No. 20-25133-Civ-Scola, 2021 WL 4459648, at *5 (S.Dl. Fla. Sept. 29, 2021) ("While Banuchi supplies facts showing that Green was indeed involved in five shootings … in addition to the shooting of Foster, she neglects to present any actual facts showing that those shootings implicated Green's use of excessive force, never mind that the City was aware that those shootings implicated excessive force.").

Even if Plaintiff had adequately alleged that the City breached a duty regarding training, Plaintiff has not pled facts establishing that such a breach of duty regarding training was a proximate cause of the Gedeus' alleged death by shooting. Here, Plaintiff alleges that Officer Morris: was dispatched in response to a sexual battery call and a BOLO being issued; arrived at the scene with other law enforcement officers and began searching for individuals who fit the BOLO description; struck Gedeus with his patrol vehicle in the course of such searching; ordered Gedeus to turn around and walk toward him; chased after Gedeus when Gedeus ran away; and ultimately discharged his firearm on Gedeus. (DE 48, ¶¶ 12-13, 15, 17-19, 21). Plaintiff further alleges that Gedeus died after sustaining at least ten (10) bullet wounds to the body, three (3) of which were in his back. (*Id.*, ¶ 22). Plaintiff has failed to allege facts demonstrating how Officer Morris' alleged shooting of Gedeus under the circumstances alleged by Plaintiff was proximately caused by allegedly negligent training. *See Wynn*, 727 F. Supp. 2d at 1317 ("Taylor's strike of the plaintiff was not caused by a lack of training under either version of the incident. Thus, the plaintiff has not shown what additional training would have either prevented Taylor from losing his temper, or from reacting instinctively to an attempt to grab his taser. Accordingly, the claim of negligent training fails because the plaintiff has not shown that inadequate training caused his injury."). Officer Morris' alleged failure to activate his body-worn camera did not cause the shooting, and Plaintiff has not identified the City's or FLPD's excessive force training program or explained how the City or FLPD was negligent in implementing it.

Based on the apparent reasoning behind Plaintiff's negligent training claim, "every time an employer allowed an employee to do something wrong or otherwise facilitated, however unintentionally, an employee's wrongful act, the employer would be liable for failure to train the employee. The negligent training cause of action is not this broad; instead, [Plaintiff] must identify a training program or policy and explain specifically how the City was negligent in implementing

13

it." *Watts*, 146 F. Supp. 3d at 1269. Plaintiff has not done so; therefore, his negligent training claim in the Third Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *see also Banuchi*, 2021 WL 4459648, at *5 (dismissing negligent training claim based on similar and some nearly identical allegations).

## IV. Plaintiff's Negligent Training Claim (Count IV) Is Barred by Sovereign Immunity.

The negligent training claim in Count IV should be dismissed for the additional and independent reason that the claim is barred by sovereign immunity as it challenges a discretionary, decision-making function of the City. Under Florida law, a governmental agency is immune from tort liability based upon actions that involve its "discretionary functions." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1266 (11th Cir. 2001). A discretionary function is one in which "the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning." *Henderson v. Bowden,* 737 So.2d 532, 538 (Fla.1999) (citation and internal quotation marks omitted). "An 'operational' function, on the other hand, is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented." *Id.* (citation and internal quotation marks omitted). Florida's discretionary function exception to its general waiver of sovereign immunity "is grounded in the doctrine of separation of powers," and "it would be an improper infringement of separation of powers for the judiciary, by way of tort law, to intervene in fundamental [decision-making] of the executive and legislative branches of government, including the agencies and municipal corporations they have created." *Kaisner v. Kolb,* 543 So.2d 732, 736–37 (Fla.1989); *see also Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1117-18 (11th Cir. 2005).

The Eleventh Circuit applied the foregoing principles in *Lewis v. City of St. Petersburg*, a case brought on behalf of the estate of a motorist shot and killed by St. Petersburg police officers. There, the plaintiff had alleged that the city "breached its duty to [Lewis] by failing to properly train its officers in how to handle a crisis management situation and failing to train its officers regarding the proper use of force in a crisis management situation." 260 F.3d at 1265. The Eleventh Circuit affirmed the dismissal of the negligent training claim, finding the acts it challenged were "'discretionary' governmental functions immune from tort liability." *Id.* at 1266. The Court observed that "Lewis does not challenge the implementation or operation of the City's

14

police training program as it relates to the officers involved in the shooting, but rather Lewis challenges the City's policy decisions regarding what to include in the training of its police officers." *Id.* The Court reasoned that "[a] city's decision regarding how to train its officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning." *Id.* Thus, Lewis' challenge to the reasonableness of "basic policy decisions" made by the city in training its police officers was barred by "the 'discretionary' function exception to [Florida's] waiver of sovereign immunity." *Id.*

Plaintiff's few allegations which specifically address training (DE 48, ¶¶ 43, 60, 108, 110, 113) are recounted in detail in Section III, *supra*, and are analogous to the plaintiff's allegations in *Lewis*. As discussed in Section III above, Plaintiff's allegations in this case clearly challenge the content and subject matter included (or allegedly not included) in FLPD's training of its police officers. Because Plaintiff is challenging basic policy decisions made by the City with respect to the training of its law enforcement officers, the "discretionary function exception to the waiver of sovereign immunity applies and [Plaintiff's] claim is barred." *Lewis*, 260 F.3d at 1266. Accordingly, Plaintiff's claim should be dismissed. *See Lordeus v. Miami-Dade Cnty.*, 263 F. Supp. 3d 1307, 1312 (S.D. Fla. 2017) (dismissing claim for negligent training or instruction where plaintiff alleged that county failed to properly train, instruct, oversee and/or manage its deputy sheriffs and failed to enact or implement sufficient policies and procedures to ensure against the use of excessive force by its officers in the line of duty, on the ground that the alleged omissions were discretionary governmental functions from which the county was immune); *Gelbard v. City of Miami, Fla.*, 845 F. Supp. 2d 1338, 1341 (S.D. Fla. 2012) (holding that claim that city negligently failed to train its police officers involved a discretionary function and, therefore, the city was immune from liability); *Early v. City of Homestead, Fla.*, No. 18-24260-CIV, 2019 WL 3083422, at *7 (S.D. Fla. July 15, 2019) ("[T]o the extent that the Plaintiffs are attempting to challenge the City's decisions regarding what subject matter to include in the training of its police officers, the City is immune from such a claim. Accordingly, Count X is dismissed."); *Mendoza v. City of Hialeah*, No. 17-21790-CIV, 2017 WL 4737262, at *6 (S.D. Fla. Oct. 19, 2017) (same); *Frazier v. Israel*, No. 18-CV-61418, 2018 WL 4599622, at *5 (S.D. Fla. Sept. 25, 2018) ("Because Plaintiff's claim is premised upon the content of training by the Sheriff, the discretionary function exception to the waiver of sovereign immunity applies, and Plaintiff's claim is barred."); *see also*

*Barmapov-Segev v. City of Miami*, No. 19-237442-CIV, 2019 WL 6170332, at *6 (S.D. Fla. Nov. 20, 2019).

Based on Plaintiff's allegations, even if Plaintiff were granted leave to amend his negligent training claim, such an amendment would be futile in light of the application of sovereign immunity. *See Lordeus*, 263 F. Supp. 3d at 1312. Accordingly, Plaintiff's negligent training claim should be dismissed with prejudice. *See id.*; *see also ABDO Cos., Inc. v. James River Ins. Co.*, No. 21-CIV-61100-RAR, 2021 WL 2782166, at *3 (S.D. Fla. July 2, 2021) (dismissing negligent training claim with prejudice "because amendment would be futile").

## V.     The Court Should Decline to Exercise Supplemental Jurisdiction Over the State Law Battery Claim Against the City (Count V).

Plaintiff asserts a state law battery claim against the City in Count V of the Third Amended Complaint. While the City is not seeking dismissal of Count V, *as pled*, pursuant to Rule 12(b)(6), the City would urge the Court to decline to exercise supplemental jurisdiction over this state law claim in light of the foregoing grounds supporting dismissal of Plaintiff's federal claim against the City and Plaintiff's other state law claim against the City. *See* 28 U.S.C. § 1367(c)(3). Alternatively, the City would request an extension of time to file a responsive pleading until the Court has ruled upon this Motion, for purposes of judicial economy and maintaining clarity in the pleadings.

## CONCLUSION

For all the foregoing reasons, Plaintiff's Third Amended Complaint against the City should be dismissed.

WHEREFORE, Defendant, CITY OF FORT LAUDERDALE, respectfully requests that this Honorable Court enter an Order granting this Motion, dismissing Plaintiff's Third Amended Complaint (DE 48) against the City, awarding Defendant attorneys' fees pursuant to 42 U.S.C. § 1988 and costs, and providing any further relief the Court deems just and appropriate.

Respectfully submitted this 14th day of July, 2022

                                                  /s/ Jeffery R. Lawley
                                                 Jeffery R. Lawley, Esq.
                                                 Florida Bar No.: 0596027
                                                 Email: jrl@bclmr.com
                                                 BILLING, COCHRAN, LYLES,
                                                     MAURO & RAMSEY, P.A.

        Las Olas Square, Suite 600
        515 East Las Olas Boulevard
        Fort Lauderdale, FL  33301
        Tel: 954-764-7150
        Fax: 954-764-7279
        ***Attorneys for Defendant, City of Fort Lauderdale***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of July, 2022, I electronically filed a true and correct copy of the foregoing document with the Clerk of the U.S. District Court for the Southern District of Florida by using the CM/ECF system with a copy being served electronically upon counsel of record for all parties appearing before the Court through the notices of filing generated by the CM-ECF system.

        By:  /s/ Jeffery R. Lawley
        Jeffery R. Lawley, Esq.
        Fla. Bar No. 0596027
        jrl@bclmr.com