UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-cv- 62187-WPD

**TONY SYFFRAD**, as Personal Representative
of the Estate of **BARRY GEDEUS**,

    Plaintiff,

vs.

**CITY OF FORT LAURDEDALE**, and
**ROBERT MORRIS**, in his individual capacity,

    Defendants.
_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISSMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

COMES NOW, Plaintiff **TONY SYFFRAD**, as Personal Representative of the Estate of **BARRY GEDEUS**, deceased, ("Mr. Gedeus" or "Plaintiff") by and through undersigned counsel, files this response in opposition to Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint filed by Defendant, **CITY OF FORT LAUDERDALE** ("Defendant" or "City"), and states as follows:

### INTRODUCTION

This matter arises from an action filed by Plaintiff, Tony Syffrad, as Personal Representative of the Estate of Barry Gedeus, alleging use of excessive force by Officer Robert Morris on March 8, 2020. On July 14, 2022, Defendant, City, filed its Motion to Dismiss. [D.E. 50]. Therein, Defendant City challenged Counts III, IV, and V of Mr. Gedeus' Third Amended Complaint, filed on June 30, 2022. The Defendant does so primarily by inviting this Court to forgo the well-established precedent of examining the facts presented in the light most favorable

to the nonmoving party and instead asks this tribunal to give greater force to their own assertions. This is clearly not the law. As such, the Defendant's Motion should be denied in its entirety.

## MEMORANDUM OF LAW

Under federal law, a Plaintiff attempting to overcome a motion to dismiss is responsible only for demonstrating the plausibility of his entitlement to judgment through sufficient facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"). Additionally, it is entrenched within federal jurisprudence that the facts articulated by the nonmovant in his complaint *must* be taken as true. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *AM. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) ("We review de novo the district court's grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff."). In essence, the courts have established a particularly low hurdle for the nonmovant to surmount in opposing a motion to dismiss. *Bluegreen Corp. v. PC Consulting, Inc.*, 0780385CIV-RYSKAMP, 2007 U.S. Dist. LEXIS 55257 (S.D. Fla. July 31, 2007); *cf. Jackson v. BellSouth Telecommunications, Inc.*, 181 F. Supp. 2d 1345, 1353 (S.D. Fla. 2001), *aff'd sub nom. Jackson v. BellSouth Telecommunications*, 372 F.3d 1250 (11th Cir. 2004) ("In sum, underpinning this legal framework is the thought that a motion to dismiss 'is viewed with disfavor and rarely granted.'")

**I.   PLAINTIFF PROPERLY PLED A CLAIM FOR EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT – DUE PROCESS (42 U.S.C § 1983).**

In moving to dismiss Count III of the Third Amended Complaint, Defendant argues that the Third Amended Complaint fails to state a claim upon which relief can be granted, as the allegations in Count III are conclusory and do not establish a policy, practice, or custom on the part of the City that was the moving force behind the alleged unconstitutional violations. [D.E. 50, ¶ 7].

The Court is reminded that in *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978), the Supreme Court held that a municipality may be sued under § 1983 if its "policy or custom" was the moving force behind the constitutional violation. In a later case, *Leatherman v. Tarrant County Narcotic Intelligence & Coord. Unit*, 507 U.S. 163, 165 (1993), the Supreme Court rejected a "heightened pleading standard" for claims of § 1983 municipal liability and held that "a claim of municipal liability is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a ***bare allegation*** that the individual officers' conduct conformed to official policy, custom, or practice." *Id*. (emphasis added); *see also Stoker v. Smith*, 1999 U.S. Dist. LEXIS 5358, *6 (M.D. Fla. 1999) ("bare allegation" that individual deputy officers' conduct conformed to official policy, custom, or practice was sufficient to state a claim for § 1983 municipal liability against Pinellas County even though the County had argued that it was not responsible for the actions of the Sheriff's Office); *Golden v. City of Chicago*, 187 F.R.D. 567, 568 (N.D. Ill. 1999) (same).

In Defendant's Motion to Dismiss, Defendant attempts to analogize the case at hand with *Marantes v. Miami-Dade County*, 649 Fed. Appx. 665 (11th Cir. 2016). However, unlike in *Marantes*, where the Plaintiff pointed to only one (1) incident of excessive force alleging that the

Miami-Dade County Police Department's internal affairs process is ineffective, here, Plaintiff points to seventeen (17) *known* incidents of excessive use of force where the Defendant City failed to properly investigate incidents reported by Defendant Morris, one of those incidents resulting in the death of unarmed civilian. [D.E. 48, ¶ 24a-q]. Further distinguishable, Plaintiff cites to several incidents beginning in 2008 through 2019, of only one single police officer, Defendant Morris. Such incidents not only demonstrate that the custom and practice is ongoing, but also that the misconduct and the use of excessive force is fully recognized by the City as there are complaints from civilians *and* other law enforcement officers, alike.

Furthermore, the Defendant argues that the list of incidents suffers from the same deficiencies as those described in *Banuchi v. City of Homestead*, No. 20-25133, 2021 WL 2333265 (S.D. Fla. June 8, 2021). However, these alleged deficiencies are not a failure on the part of the Plaintiff but rather the City's failure to properly report incidents of excessive use of force. All the incidents listed in paragraph 24a-q of Plaintiff's Third Amended Complaint are nearly verbatim from the description provided in Defendant Morris' Internal Affairs file. Specifically, the Defendant highlights and the Court in *Banuchi* scrutinizes that "Banuchi provides no context for the 'complaints': Who submitted them? When were they submitted? To whom were they submitted? How many were there? What did they say?" [D.E. 50, p. 9-10]; *Id*. at *5. The reports provided by the City provide answers to some questions but leave other questions unaddressed, resulting in a partial narrative that forces the reader to piece together information that should be revealed through the proper administrative investigations conducted by the City's Internal Affairs department. Often, the crucial information to substantiate the complaint is generalized, diluted, or outright missing — the like of which will only be uncovered through the discovery process. If the incidents are indeed vague and lack crucial but poignant detail to make claims that are not

"conclusory," it is because Internal Affairs intended them to be so in order to shield the culpability of its police officers.

The Defendant argues and further cites to *Banuchi*, that a mere complaint brought forward by a citizen does not suffice. [D.E. 50, p. 9-10]. Defendant argues that the complaints must also be "substantiated," however, Defendant fails to address the City's process in which these complaints are substantiated. Naturally, for complaints to reach substantiation at the City of Fort Lauderdale, the Internal Affairs Department must 1) capture testimony properly and 2) determine if the proper procedure was followed. However, the Internal Affairs Department failed to do both as it preemptively refused to fulfill the first duty assumed of any Internal Affairs personnel — to simply listen to the citizen.

Specifically, on January 29, 2018, a citizen, who found Defendant Morris' conduct to be hostile and inappropriate after he forced himself into their home without a warrant, attempted to receive an update on the alleged investigation being conducted by Internal Affairs after the citizen submitted their complaint. To the citizen's surprise, however, the official misconduct did not end with Defendant Morris but followed them to the Department of Internal Affairs after their phone call with Fort Lauderdale Police Sergeant Wilgienson Auguste ("Sergeant Auguste"). After expressing fear for the life of themselves and their children due to Defendant Morris' continuous official misconduct, which has occurred on multiple occasions, the citizen left the phone call in disbelief and despair, emailing to Sergeant Auguste: "You stated to me that you closed my case two weeks ago but yet haven't notified me that the case was closed nor the underlying result of your investigation. You handled me in a very displeasant [sic] manner and hung up in my face." The email goes on to say that Sergeant Auguste, a Sergeant in the Internal Affairs Department, also made the process of submitting evidence arduous by requesting the same video footage

multiple times and claiming that videos of the entire incident would need to be provided even though the videos in his possession sufficiently captured Defendant Morris' official misconduct, which is described differently by Defendant Morris. Such difference seen in those videos from those described in Defendant Morris' arrest affidavit and use of force report, certainly point to the City's knowledge of the falsification of police reports, which will need to be explored further through the discovery process.

The City will applaud its police department on its ability to merely *hold* an investigation. However, when citizens are dissuaded from submitting complaints and treated with hostility by both the police officers who engage in the official misconduct and the subsequent supervisors entrusted to investigate said complaints, the City fails to listen to the people they are supposed to protect by taking incomplete statements and giving more weight to an officer who has clearly overstated the resistance used or the manner in which the officer effectuated an arrest, thus decreasing the likelihood of proper filing and investigation. It is precisely these measures, refusing to conduct a full non-biased investigation like those conducted by the Citizen Police Review Board, that results in a custom that protects and prioritizes the culpability of the police officers first and foremost, and limits instances of complaints being substantiated. It is worth noting that the Plaintiff is only aware of this encounter with Internal Affairs because of our own investigation. Nowhere is this interaction between the citizen and the Internal Affairs captured in Defendant Morris' employment file. It is this ineffectiveness that begins with the failure to properly report that deters citizens from not only ensuring that complaints are filed properly, but that they are filed at all. The City, along with Sergeant Auguste, knew of the public's concerns of Defendant Morris' unlawful misconduct through the use of excessive force and overstatement of the resistance to which the use of force allegedly in response. The City, being aware of same, created a custom of

ignoring and covering up known and suspected misconduct by its officers, namely Defendant Morris, as described above.

Defendant attempts to shape Plaintiff's argument in a way that Plaintiff must prove similar incidents to that alleged in the subject lawsuit. However, Plaintiff clearly alleges that the City had a policy, practice, or custom to allow the use of excessive force, which in this case was the use of a firearm. [D.E. 50, p. 6]. *See Hogan v. City of Easton*, 2006 U.S. Dist. LEXIS 90235, at *28 (E.D. Pa. Dec 12, 2006) (holding that "to the extent that the City seeks to shape the argument as one involving 'prior shooting incidents,' rather than prior excessive force incidents generally, we find that the argument is fallacious. Count II of the complaint clearly states that the City had a policy, practice or custom to 'use excessive force,' which in the Hogans' case was the use of firearms. The Hogans' custom or policy claim cannot, however, be limited to only prior shootings."); *see also Beck v. City of Pittsburgh*, 89 F.3d 966, 973 (3d Cir. 1996) (stating that, because of prior complaints involving slapping an arrestee, improperly handcuffing an arrestee, billy clubbing and verbally abusing an arrestee, and taunting and punching another arrestee, a reasonable jury could have inferred that municipality had knowledge of police officer's propensity for violence when effecting an arrest, so as to support a claim involving pushing his gun into arrestee's face, cursing at and striking arrestee in the face with the end of his gun). To establish deliberate indifference on the part of supervisors and the municipality, a plaintiff also may point to evidence of deficient treatment of prior, similar complaints against that officer. *See id.*, 89 F.3d at 973-74 (holding that written complaints were sufficient for a reasonable jury to infer that the Chief of Police and department knew, or should have known, of officer's violent behavior in arresting citizens; complaints came in a narrow period of time and were of similar nature); *Martin v. City of Philadelphia*, No. 99-CV- 543, 2000 U.S. Dist. LEXIS 10242 (E.D. Pa. July 24, 2000) (finding

that a monitoring report, noting that the City received 221 civilian complaints about physical abuse by various police officers, 43 complaints regarding false arrest or illegal detention, and that the City initiated 50 investigations regarding officers' use of force and physical abuse without civilian prompting, raised a genuine issue of material fact as to City's knowledge of a prior pattern of similar incidents); *Borger-Greco v. AMTRAK*, No. 02-CV- 6862, 2005 U.S. Dist. LEXIS 10658, 2005 WL 1320147 (E.D. Pa. June 1, 2005) (holding that officer's history of excessive force complaints, comments from instructors on his failures to follow procedures and lack of self-control under pressure, was sufficient evidence from which a jury could conclude that Amtrak exhibited deliberate indifference through its failure to train, discipline, or control officer). These cases make clear that the type of excessive force need not be identical in all prior incidents to find a policy or custom condoning an officer's use of excessive force, the City's attempt to limit the scope of prior incidents to only shootings would not be appropriate. *See Hogan v. City of Easton*, 2006 U.S. Dist. LEXIS 90235, at *28 (E.D. Pa. Dec 12, 2006).

The City was aware of Defendant Morris' use of excessive force and the City simply turned away those who came forward and attempted to file internal complaints against Defendant Morris and simply covered up any instance of misconduct by failing to document same in Defendant Morris' employment file. Such complete continuous disregard of Defendant Morris' continued use of excessive force was the moving force behind the unconstitutional violations alleged in Plaintiff's Third Amended Complaint. "If the City is shown to have tolerated known misconduct by police officers, the issue whether the City's inaction contributed to the individual officers' decision [to use excessive force] in this instance is a question of fact for the jury." *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990).

*Banuchi* is further distinguishable as the Plaintiff failed to factually support their claims by failing to provide context for the complaints alleged against the officer. Here, Plaintiff details each incident whereby Defendant Morris used excessive force, continuously failed to adhere to the City's policies and procedures, and the City knew, or should have known, yet decided to ignore and/or covered up such misconduct.

Upon information and belief, Defendant Morris was or is part of the NW Raiders also known as the Street Crimes Unit, however, such information will be further revealed through the discovery process as such information is wholly devoid from Defendant Morris' file, despite having memoranda of commendation relative to undercover activities of which the NW Raiders are notorious for conducting. However, such activities are not reflective in Defendant Morris' file despite being part of a specialized unit conducting sting operations in plain clothes and unmarked police vehicles of known drug dealers. Such absence of record in Defendant Morris' file is further evidence of the City's *de facto* policy, practice, and/or custom of covering up officer's misconduct. Specifically, on May 25, 2007, Defendant Morris along with Officer Geoffrey Schaffer ("Officer Schaffer"), conducted a sting operation whereby Defendant Morris, in plain clothes and in an unmarked police vehicle, conducted an undercover sting. It is important to note that in May 2012, Officer Schaffer, a member of the NW Raiders, was the subject of an investigation conducted by the Broward County State Attorney's Office and the FBI public corruption task force, which led to Officer Schaffer's arrest and subsequent charge of official misconduct and falsifying records. Through the discovery process, Plaintiff will be able to show not only additional deficiencies that have been removed from Defendant Morris' employment file, but also Defendant Morris' involvement with the NW Raiders.

Again, Plaintiff urges this Court to deny Defendant's Motion to Dismiss and allow parties to engage in the discovery process as same will surely reveal that the City has a *de facto* policy, practice, and/or custom of deficient and biased procedures for investigating complaints of excessive force, failing to maintain accurate complete records of complaints, and failing to disclose complete records of complaints against its officers, namely, Defendant Morris.

**II.   COUNT IV PROPERLY STATES A CLAIM AGAINST THE CITY FOR NEGLIGENT TRAINING.**

The City attempts to dismiss Count IV relative to FLPD's negligent training claim by arguing that Plaintiff does not identify an existing training program or training policy and explain how the City was negligent in implementing it. [D.E. 50, p. 12]. Although Plaintiff certainly identifies several existing training policies whereby the City breached its duty by failing to provide adequate training to Defendant Morris, it is important to note that the last time Defendant Morris received any Use of Force training was in April 2015 and has yet to receive any Use of Force retraining, in complete violation of Florida's mandatory retraining requirements for law enforcement officers, which is to occur every four (4) years. Fla. Admin. Code R. 11B-27.00212. In fact, without such training, Defendant Morris is banned from performing duties of a sworn officer, yet the City has allowed Defendant Morris to continue performing such duties in violation of the requirements imposed on all law enforcement officers. *Id*. Prior to his April 2015 Use of Force training, Defendant Morris only received one other Use of Force training at the inception of his employment in September 2006. As such, in the sixteen (16) years Defendant Morris has been employed with the City, he has received two (2) Use of Force trainings. Certainly, the City was aware of same.

Further, Defendant Morris has only received one (1) BWC training, despite consistently failing to activate his BWC while engaged in field activities, yet the City failed to recommend such training when same was clearly necessary for Defendant Morris.

Unlike in *Lewis v. City of St. Petersburg*, 260 F.3d 1260 (11th Cir. 2001), where Lewis alleged a count against the city for negligent training for failing to train its officers in how to handle a crisis management situation, here, Plaintiff challenges the implementation and/or operation of the City's police training program. In conjunction with Defendant Morris' use of force incidents detailed in paragraph 24 a-q of the Third Amended Complaint, it is clear that the City was placed on notice of prior issues concerning Officer Morris' use of excessive force against citizens. The City was negligent in failing to implement its own policies relative to use of force training, agency review of officer's use of force reports during citizen encounters, its officer's response to resistance, and the use of BWC while engaged in field activities. The City's 119.3 policy titled, "Response to Resistance – Reporting, Evaluation and Investigation" states, in part, "[p]ursuant to any response to resistance, any reviewing Department supervisor may recommend appropriate remedial training for the indicated Department member." Had the City conducted a proper agency review of incidents, including the review of BWC, where Defendant Morris reported using force during citizen encounters, in addition to its knowledge of the lack of use of force training Defendant Morris has received, the City would have recommended remedial training and certainly would have required retraining in order for Defendant Morris to remain in compliance with the mandatory requirements under the Criminal Justice Standards and Training Commission. Fla. Admin. Code R. 11B-27.00212.

The City was also placed on notice of Defendant Morris' continued violation of failing to activate his BWC while engaged in field activities. The City's BWC policy 315, states, in part,

"[i]t is the policy of the Fort Lauderdale Police Department to utilize BWC to document law enforcement interactions with the public by capturing evidence of the actions, conditions and statements of all involved parties. Sworn staff members below the rank of Lieutenant are required to use BWCs while engaged in field activities. All sworn staff, regardless of rank shall utilize BWCs while working off-duty details." Due to the City's failure to properly investigate incidents of excessive force, not only by failing to review BWC, but also by maintaining a custom of ignoring known suspected misconduct and failing to implement BWC training upon issuing same to Defendant Morris, it has encouraged Defendant Morris to continue using force indiscriminately.

In all, the City was negligent in implementing *any* training program relative to Defendant Morris despite having every reason to mandate Defendant Morris to attend retraining relative to use of force and the appropriate reporting and subsequent evaluation and investigation, as well as the use of his BWC. Accordingly, Defendant's Motion to Dismiss IV of the Third Amended Complaint should be denied.

As to Defendant's request to the Court to decline to exercise supplemental jurisdiction over the battery claim, based on the foregoing grounds in support of denying Defendant's Motion to Dismiss, this Court should exercise supplemental jurisdiction over the state law battery claim and deny Defendant's Motion to Dismiss Count V of the Third Amended Complaint. Alternatively, this Court should deny the City's request for an extension of time to file a responsive pleading as to Count V as such request contravenes the purpose of judicial economy.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Plaintiff **TONY SYFFRAD**, as Personal Representative of the Estate of **BARRY GEDEUS**, deceased, respectfully requests oral argument on his Opposition to Defendant's Motion to Dismiss. Defendant's Motion to Dismiss raise questions of

liability. Given the importance of these questions and the complexity of this area of law, Plaintiff believes the Court's decision-making process would be significantly aided by oral argument. Plaintiff estimates thirty (30) minutes will be necessary for argument.

## **CONCLUSION**

For the foregoing reasons, the Defendant's Motion to Dismiss should be denied. In the alternative, Plaintiff requests an opportunity to amend the Third Amended Complaint if this Court believes Count III and/or IV are not sufficiently pled.

Respectfully submitted,

FRIEDLAND & ASSOCIATES
707 NE 3rd Avenue, Suite 201
Fort Lauderdale, Florida 33304
Telephone: (954) 321-8810
Facsimile: (954) 321-8995
pleadings@yourfightourbattle.com

By: _/s/ Greeny Valbuena_____
Lee Friedland, Esquire
Florida Bar No.: 991163
Greeny Valbuena, Esquire
Florida Bar No.: 1018239

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on July 28, 2022, this document is being served electronically on all counsel of record identified on the attached Service List.

                                                 */s/ Greeny Valbuena*
                                                 Greeny Valbuena

## SERVICE LIST

Jeffery Lawley, Esq.
Billing, Cochran, Lyles, Mauro & Ramsey, P.A.
Las Olas Square, 6th Floor
515 East Las Olas Boulevard
Fort Lauderdale, FL 33301
Telephone: (954) 764-7150
Facsimile: (954) 764-7279
Email: jrl@bclmr.com

Michael Burke, Esq.
Johnson, Anselmo, Murdoch, Burke,
Piper & Hochman, P.A.
2455 East Sunrise Boulevard, Ste. 1000
Fort Lauderdale, FL 33304
Telephone: (954) 463-0100
Email: burke@jambg.com