UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:21-cv-62187-WPD

TONY SYFFRAD, as Personal Representative
of the Estate of Barry Gedeus,

    Plaintiff,

v.

CITY OF FORT LAUDERDALE and
ROBERT MORRIS, in his individual capacity,

    Defendants.
_____/

**DEFENDANT, CITY OF FORT LAUDERDALE'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

    Defendant, CITY OF FORT LAUDERDALE ("City"), by and through its undersigned counsel and pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, and Southern District Local Rule 7.1(c), hereby replies to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint (DE 51) ("Response") and states as follows:

    Plaintiff's Response fails to rebut the arguments set forth in the City's Motion to Dismiss Plaintiff's Third Amended Complaint and Incorporated Memorandum of Law (DE 50) ("Motion") and otherwise fails to show why Plaintiff's Third Amended Complaint (DE 48) should not be dismissed. Herein, the City replies specifically to the arguments in Plaintiff's Response.

**I. Reply to Plaintiff's Arguments Regarding His § 1983 Claim in Count III**

    Plaintiff correctly notes that the Supreme Court rejected a "heightened pleading standard" for claims of section 1983 municipal liability in *Leatherman v. Tarrant County Narcotic Intelligence & Coordination Unit*, 507 U.S. 163 (1993); however Plaintiff incorrectly asserts that the Supreme Court "held" in that case that "a claim of municipal liability is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." (DE 51, p. 3). That language in *Leatherman* is a quote from a Ninth Circuit opinion, *Karim-Panahi v. Los Angeles*

1

*Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988), which the *Leatherman* Court cites as an example of a conflict among the Courts of Appeals that gave rise to the Supreme Court's decision to grant certiorari. *Leatherman*, 507 U.S. at 165. The quote itself is not from the Supreme Court and certainly does not represent the Supreme Court's holding.[1] The Supreme Court's holding was that a federal court may not apply a heightened pleading standard more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure in civil rights cases alleging municipality under 42 U.S.C. s. 1983. *Leatherman*, 507 U.S. at 164.

Since the 1993 *Leatherman* opinion, the Supreme Court has clarified the generally applicable pleading requirements under Rule 8 in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and numerous cases have considered whether complaints allege sufficient facts to establish a plausible claim for relief under the Rule 8 pleading standard, as clarified by *Twombly* and *Iqbal*. *See, e.g.*, *Marantes v. Miami-Dade Cnty.*, 649 Fed. Appx. 665, 673 (11th Cir. 2016) (affirming dismissal of a *Monell* claim involving allegations analogous to those Plaintiff has asserted in this case); *see also* DE 50, p. 10 (discussing *Marantes*). In *Pierre v. City of Miramar, Fla., Inc.*, 537 Fed. Appx. 821 (11th Cir. 2013), for example, the Eleventh Circuit affirmed dismissal of a § 1983 municipal claim were the plaintiff alleged that the city had a policy or custom of failing to enforce the requirement that officers have probable cause for an arrest, permitting officers to turn a blind eye to easily discoverable evidence in determining whether probable cause exists, and failing to train or supervise officers. *Id.* at 826-27. The court determined that the plaintiff "alleged no facts supporting the existence of these purported City policies" and concluded that dismissal was proper. *Id.*

Plaintiff attempts to distinguish *Marantes* (*see* DE 51, pp. 3-4), but Plaintiff's conclusory statements in his Response are not supported by the factual allegations in the Third Amended Complaint. Plaintiff claims that his Third Amended Complaint "points to seventeen (17) *known* incidents of <u>excessive use of force</u> where the Defendant City failed to properly investigate incidents reported by Defendant Morris, one of those incidents resulting in the death of an unarmed civilian." (DE 51, p. 4) (citing DE 48, ¶¶ 24.a.-q.) (underlined emphasis added). However, as discussed in the City's Motion (DE 50, pp. 5-7), the allegations in paragraphs 24.a.-q. of the Third

---

[1] Another case cited in Plaintiff's Response, *Stoker v. Smith*, No. 98-751-CIV-T-17B, 1999 WL 224579 (M.D. Fla. Mar. 11, 1999) (*see* DE 51, p. 3), makes the same mistake as Plaintiff in characterizing that language as the Supreme Court's own. *See Stoker*, 1999 WL 224579, at *6.

Amended Complaint merely allege the circumstances under which Morris used force; they do not establish that the force used by Officer Morris in such instances was excessive. The instances alleged in those paragraphs are also factually dissimilar from the facts alleged in this case. Additionally, Plaintiff's allegations do not establish that the City "failed to properly investigate" such incidents, as Plaintiff contends in the Response. Plaintiff's further contention that the incidents demonstrate that "the misconduct and the use of excessive force is fully recognized by the City as there are complaints from civilians *and* other law enforcement officers, alike" (DE 51, p. 4), again, merely labels as "misconduct" and "excessive force" incidents which do not support such a (mis)characterization. Alleging dissimilar incidents involving the use of force, in which the force used appears justified based on the circumstances provided, and then merely characterizing such incidents as involving "misconduct" and/or "excessive force" does not suffice.

Plaintiff then argues, creatively, that the deficiencies in his pleading "are not a failure on the part of the Plaintiff but rather the City's failure to properly report incidents of excessive use of force." (DE 51, p. 4). Plaintiff states that the incidents alleged in paragraphs 24.a.-q. "are nearly verbatim from the description provided in Defendant Morris' Internal Affairs file." (*Id.*). Plaintiff further argues that "[t]he reports provided by the City provide answers to some questions but leave other questions unaddressed, resulting in a partial narrative that forces the reader to piece together information that should be revealed through the proper administrative investigations conducted by the City's Internal Affairs department." (*Id.*). Such assertions and argument are misplaced. To state a *Monell* claim, Plaintiff must allege facts demonstrating that the City had a policy or widespread practice or custom that was the moving force behind the constitutional violation. Plaintiff cannot satisfy this pleading standard by claiming that Officer Morris' Internal Affairs file does not provide sufficient detail to indicate that the force reportedly used on various occasions was excessive or that any citizen or other complaints about the force used had merit. There are no allegations in the Third Amended Complaint that establish that any complaints of excessive force by Officer Morris were substantiated or sustained. While Plaintiff seems to offer unfounded speculation that all reported uses of force necessarily must have been excessive and all complaints of excessive force necessarily must have had merit, there are no allegations in the Third Amended Complaint that support such conjecture. Plaintiff is improperly attempting to use a defectively pled *Monell* claim as a fishing expedition to try to uncover "crucial information" that might reveal whether or not there is actually any factual basis for a *Monell* claim. (DE 51, pp. 4-5).

Plaintiff then re-engages in his now familiar technique of inserting new allegations in a response to the City's motion to dismiss which have not been included in the pleading to which the motion to dismiss is directed. Plaintiff discusses an alleged January, 2018 incident involving a citizen, "who found Defendant Morris' conduct to be hostile and inappropriate after he forced himself into their home without a warrant," and attempted to receive an update on an investigation by Internal Affairs after the citizen had submitted a complaint. (DE 51, pp. 5-6). The discussion of this alleged incident is irrelevant for purposes of Plaintiff's Third Amended Complaint and the City's Motion, since the incident is not alleged or referenced in the Third Amended Complaint. For purposes of the City's Motion, such new allegations are irrelevant and should be disregarded. *See Burgess v. Religious Tech. Ctr., Inc.*, 600 Fed. Appx. 657, 665 (11th Cir. 2015) ("We repeatedly have held that plaintiffs cannot amend their complaint through a response to a motion to dismiss.") (citation omitted); *United American Corp. v. Bitmain, Inc.*, 530 F. Supp. 3d 1241, 1265 n.29 (S.D. Fla. 2021) (stating that plaintiff raised a matter "for the first time in its response memorandum, and therefore the Court does not consider it"). New or different allegations in Plaintiff's Response do not affect whether the claim actually pled in Count III of Plaintiff's Third Amended Complaint states a § 1983 claim against the City upon which relief can be granted. The Court must look at the allegations in the Third Amended Complaint, not the new allegations scattered throughout Plaintiff's Response, in determining whether Plaintiff's claims should be dismissed for failure to state a claim. *See Ramos v. University of Miami*, No. 21-cv-22151-BLOOM/McAliley, 2021 WL 4949160, at *5 (S.D. Fla. Oct. 25, 2021) ("The Eleventh Circuit has determined that courts are limited to the four corners of the complaint in addressing a motion to dismiss and that the plaintiff cannot amend a complaint through arguments made in opposition to a motion to dismiss.").

Plaintiff's further arguments and extrapolations from this unpled incident on pages 6 and 7 of the Response should also be disregarded. There are no allegations in the Third Amended Complaint supporting Plaintiff's conclusory statements that "citizens are dissuaded from submitting complaints and treated with hostility" by police officers "who engage in the official misconduct" and investigating supervisors or that the City "fails to listen to the people they are supposed to protect by taking incomplete statements and giving more weight to an officer who has clearly overstated the resistance used or the manner in which the officer effectuated an arrest, thus decreasing the likelihood of proper filing and investigation." (DE 51, p. 6). Moreover, this single

4

incident involving an alleged complaint of a warrantless entry by Officer Morris does not support Plaintiff's contention that "[t]he City, along with Sergeant Auguste, knew of the public's concerns of Defendant Morris' unlawful conduct through the use of excessive force and overstatement of the resistance to which the use of force allegedly in response [sic]." (DE 51, p. 6).

Plaintiff states that "Defendant attempts to shape Plaintiff's argument in a way that Plaintiff must prove similar incidents to that alleged in the subject lawsuit." (DE 51, p. 7). To the extent that Plaintiff implies that he can state a *Monell* claim against the City based on dissimilar incidents, Plaintiff is wholly incorrect. *See Banuchi v. City of Homestead*, No. 20-25133-Civ-Scola, 2021 WL 2333265, at *4 (S.D. Fla. June 8, 2021) ("Random acts, isolated incidents, or *dissimilar complaints are insufficient to establish a custom or policy*. … In order to survive dismissal on each § 1983 claim against the City, then, [the plaintiff] must allege other incidents, occurring on a widespread basis, *involving factual situations that are substantially similar to the facts alleged in the case*.") (emphasis added). As this Court has explained in its prior Order dismissing Plaintiff's Amended Complaint and reiterated in its Order dismissing Plaintiff's Second Amended Complaint, "Plaintiff fails to allege with adequate specificity the circumstances surrounding any of these reports or incidents and *how they are similar to the facts of this case*, thereby indicating a widespread custom or practice. … Without a more detailed factual narrative regarding Morris' or other officers' allegedly egregious behavior and the City's deliberate indifference to it, the Court cannot accept Plaintiff's conclusory assertion that such incidents constitute widespread and egregious conduct *sufficiently similar to the subject incident*." (DE 39, pp. 8-9; DE 47, p. 8) (emphasis added). The Court's prior assessment applies to the Third Amended Complaint as well.

The cases upon which Plaintiff relies in this part of his Response—all from the Third Circuit and the Eastern District of Pennsylvania (DE 51, pp. 7-8)—are inapposite and do not establish that the allegations in the Third Amended Complaint state a § 1983 claim against the City. Plaintiff appears to use such cases to support the notion that it is sufficient for a plaintiff to allege facts establishing a history of prior excessive force incidents generally, rather than a history of identical types of excessive force used. Even assuming, *arguendo*, that this proposition is correct, Plaintiff has not alleged facts establishing a history or pattern of excessive force; he has only alleged a bunch of instances in which force was used, and where the force used appeared to be justified (not excessive) based on the allegations.

5

Plaintiff's further arguments on page 8 of the Response continue his practice of making conclusory assertions regarding excessive force, apparently hoping that merely repeatedly invoking the words "excessive force" and "misconduct" will make up for the fact that Plaintiff has not alleged facts establishing any use of excessive force or misconduct by Officer Morris. Plaintiff's assertion that the "City simply turned away those who came forward and attempted to file internal complaints against Defendant Morris and simply covered up any instance of misconduct by failing to document same in Defendant Morris' employment file" (DE 51, p. 8) is conclusory, apparently based on a single, unpled incident, and not supported by the allegations in the Third Amended Complaint. Similarly, Plaintiff's assertion that he "details each incident whereby Defendant Morris used excessive force, continuously failed to adhere to the City's policies and procedures, and the City knew, or should have known, yet decided to ignore and/or cover up such misconduct" (DE 51, p. 9) continues to conflate the use of force with excessive force and is not supported by the facts actually alleged in the Third Amended Complaint.

Plaintiff concludes his argument regarding Count III by discussing the "NW Raiders." (DE 51, p. 9). Although Plaintiff states in his Response that "[u]pon information and belief, Defendant Morris was or is part of the NW Raiders also known as the Street Crimes Unit" (*id.*), Plaintiff does not allege in the Third Amended Complaint that Officer Morris was part of that group. Furthermore, as discussed in the City's Motion, Plaintiff does not allege facts establishing any actual constitutional violations or illegal conduct by this group, but merely discusses complaints about the group's conduct. (DE 50, pp. 8-9). In the Response, Plaintiff further appears to arbitrarily suggest that merely by conducting "undercover activities" and "conducting sting operations in plain clothes and unmarked police vehicles of known drug dealers," the NW Raiders are somehow guilty of misconduct or constitutional violations. (*See* DE 51, p. 9). Plaintiff does not cite any law suggesting that conducting uncover operations or sting operations against known drug dealers in plain clothes and unmarked vehicles is constitutionally problematic. Plaintiff's discussion of an alleged sting operation by Officer Morris and an Officer Geoffrey Schaffer in 2007 and a later investigation of Officer Schaffer in 2012 (DE 51, p. 9) is not alleged or alluded to in Plaintiff's Third Amended Complaint and, thus, not pertinent to whether the § 1983 claim pled in the Third Amended Complaint states a cause of action. In any event, the insinuated guilty-by-association with the NW Raiders because one alleged member of the NW Raiders, with whom Officer Morris allegedly once conducted a sting operation, was ultimately investigated, arrested,

and charged with official misconduct and falsifying records (with no allegation that such charges pertained to the sting operation Officer Schaffer allegedly conducted with Officer Morris) does not support the existence of a City policy or custom that was the moving force behind the alleged constitutional violation in this case.

## II. **Plaintiff's Response Does Not Rebut the City's Argument for Dismissal of Count IV.**

Plaintiff's Response fails to establish that Count IV of the Third Amended Complaint states a claim against the City for negligent training. Plaintiff states in conclusory fashion that he "certainly identifies several existing training policies whereby the City breached its duty by failing to provide adequate training to Defendant Morris" (DE 51, p. 10), but Plaintiff does not cite allegations in the Third Amended Complaint which purportedly identify such existing training policies (*see id.*). Additionally, Plaintiff does not address the allegations in the Third Amended Complaint addressed in the City's Motion (*see* DE 50, pp. 11-12) (citing DE 48, ¶¶ 43, 60, 108, 110, 113), which concern the content and substance of the City's training program. Instead, Plaintiff asserts that "it is important to note" certain allegations about Defendant Morris' history of Use of Force training (DE 51, p. 10), none of which are alleged in the Third Amended Complaint. Plaintiff, thus, continues his improper practice of inserting new allegations in his response to the City's motion to dismiss and arguing the complaint should not be dismissed based on the new, unpled allegations. This is now the third time Plaintiff has engaged in such tactics, with the Court having already recognized the prior two occasions (DE 39, pp. 9-10; DE 47, pp. 8), which tactics result in a waste of time and judicial resources. Plaintiff simply repeats and restates the same fatal flaws.

Much of Plaintiff's argument pertaining to the negligent training claim concerns the topic of body-worn cameras ("BWC"). (DE 51, pp. 11-12). Plaintiff states that Morris "has only received one (1) BWC training, despite consistently failing to activate his BWC while engaged in field activities, yet the City failed to recommend such training when same was clearly necessary for Defendant Morris." (DE 51, p. 11). However, Plaintiff does not allege anything about Officer Morris being trained, or not retrained, regarding BWC in the Third Amended Complaint; rather, Plaintiff generically alleges that Officer Morris violated FLPD's policies regarding BWC usage and that the City failed to provide adequate training in the proper use and activation of BWC. (*See* DE 48, ¶¶ 25-27, 110). However, Plaintiff does not address the City's argument that Plaintiff has

not pled facts establishing that any alleged breach of duty regarding training in BWC operation was a proximate cause of Gedeus' alleged death by shooting. (DE 50, pp. 13-14).

Although Plaintiff does not expressly address the City's sovereign immunity argument (DE 50, pp. 14-16), Plaintiff's cursory attempt to distinguish *Lewis v. City of St. Petersburg*, 260 F.3d 1260 (11th Cir. 2001), by claiming that "here, Plaintiff challenges the implementation and/or operation of the City's police training program" (DE 51, p. 11), is without merit. Plaintiff argues that "[i]n conjunction with" Morris' "**use of force** incidents" detailed in paragraphs 24.a.-q. of the Third Amended Complaint, "it is clear that the City was placed on notice of prior issues concerning Officer Morris' **use of excessive force** against citizens." (DE 51, p. 11) (emphasis added). The actual allegations in the Third Amended Complaint only establish reports or descriptions of the use of force by Morris on various occasions; they do not establish or indicate that the force used by Morris on any of those occasions was excessive. Plaintiff's characterization of the force used as "excessive" is based on nothing more than Plaintiff's own *ipse dixit* and is not supported by the factual accounts pled in the Third Amended Complaint, which do not establish that the force used by Morris on the various occasions was excessive.

Plaintiff asserts in conclusory fashion that the City "was negligent in failing to implement its own policies relative to use of force training, agency review of officer's use of force reports during citizen encounters, its officer's response to resistance, and the use of BWC while engaged in field activities." (DE 51, p. 11). As an initial matter, the allegations regarding training in Plaintiff's Third Amended Complaint do not allege a failure to implement an existing training program regarding those topics. (*See generally* DE 48, ¶¶ 43, 60, 106-115). Instead, Plaintiff's allegations concern an alleged failure to adequately train officers on certain topics (*that is, the content of the training program*), including the use and activation of BWC (DE 48, ¶ 110), the amount of force needed to apprehend an unarmed civilian (*id.*, ¶¶ 60, 108, 113), and the proper reporting of incidents that involved the use of force (*id.*, ¶ 108). Such allegations are the functional equivalent of the allegations in *Lewis* that the city breached its duty "by failing to properly train its officers in how to handle a crisis management situation and failing to train its officers regarding the proper use of force in a crisis management situation." 260 F.3d at 1265. Accordingly, the fate of Plaintiff's negligent training claim in this case should be the same as that of the plaintiff's claim in *Lewis* (that is, dismissal). *See id.* at 1266.

Plaintiff then makes arguments regarding an alleged "119.3 policy titled, 'Response to Resistance – Reporting, Evaluation and Investigation'" (DE 51, p. 11), which, again, is noticeably absent and not included as part of the allegations in Plaintiff's Third Amended Complaint. Further, there are there allegations in the Third Amended Complaint regarding the City's "knowledge of the lack of use of forced training Defendant Morris has received" (*id.*) or "the mandatory requirements under the Criminal Justice Standards and Training Commission" (*id.*) or the cited Florida Administrative Code regulation (*id.*).

Plaintiff makes a further speculative, conclusory assertion that "[d]ue to the City's failure to properly investigate incidents of excessive force, not only by failing to review BWC, but also by maintaining a custom of ignoring known suspected misconduct and failing to implement BWC training upon issuing same to Defendant Morris, it has encouraged Defendant Morris to continue using force indiscriminately." (DE 51, p. 12). That assertion completely lacks any underlying factual support in the Third Amended Complaint or the Response and, like Plaintiff's other allegations and arguments, conflates any instance where force is used or reported with an actual excessive use of force. By Plaintiff's misguided logic, reported uses of force by a police officer over the span of many years would automatically give rise to a claim against the employing municipality for negligent training. In addition, the assertion conflates allegations of a "custom," which might be pertinent to a federal *Monell* claim, with allegations regarding the implementation of an existing training program, which are required for a state law negligent training claim. Plaintiff's statement regarding the City "failing to implement BWC training" is not supported by the allegations in the Third Amended Complaint, which, at most, concern an alleged failure by the City or FLPD to enforce the BWC policy, not a failure to implement an identified, existing training program regarding BWC use. Plaintiff alleges in the Third Amended Complaint that the City failed to provide adequate training "in the proper use and activation of BWC" (DE 48, ¶ 110), which pertains to the content and subject matter of training, not its implementation. Plaintiff's similar assertion in the Response that the City "was negligent in implementing *any* training program relative to Defendant Morris" (DE 51, p. 12) suffers from the same problems.

In sum, the Response fails to show that Plaintiff alleged the facts necessary to state a claim against the City for negligent training in the Third Amended Complaint and further fails to show that the negligent training claim, as pled in the Third Amended Complaint, is not barred by sovereign immunity.

### III. The Court Should Not Exercise Supplemental Jurisdiction Over the Battery Claim.

Contrary to Plaintiff's assertions in his Response with respect to the state law battery claim in Count V of the Third Amended Complaint (DE 51, p. 12), Plaintiff has not overcome the arguments in the City's Motion supporting dismissal of the claims in Counts III and IV, and, thus, Plaintiff has not demonstrated why the Court should exercise supplemental jurisdiction over the state law battery claim. Plaintiff's alternative contention that the request for an extension of time to file a responsive pleading with respect to Count V "contravenes the purpose of judicial economy" (*id.*) is without merit. Requiring a separate responsive pleading directed to a single count, over which the Court may decline to exercise jurisdiction, in a complaint which should not otherwise survive a motion to dismiss, is a waste of judicial resources. If and when Plaintiff is able to plead a viable federal claim against the City, then the City should be permitted to respond with a single, responsive pleading that addresses all of the claims against the City.

### RESPONSE TO PLAINTIFF'S REQUEST FOR HEARING

Plaintiff's request for an oral argument on his Response (DE 51, pp. 12-13) should be denied. As discussed above, much of Plaintiff's Response is dedicated to asserting new allegations that are not included in the Third Amended Complaint. Such matters are not appropriate for consideration on a motion to dismiss, for purposes of which the Court considers whether the Third Amended Complaint, as pled, states a claim upon which relief can be granted. Plaintiff's discussion of the law in his Response is limited to a discussion of pleading standards and straightforward argument on basic principles regarding *Monell* liability and negligent training. The *Monell* and negligent training principles are not disputed and do not warrant oral argument, and oral argument on the pleading standards on a motion to dismiss would not be helpful. Plaintiff's vague statement that the Motion "raise[s] questions of liability" and comments regarding "the importance of these questions and the complexity of this area of law" (DE 51, pp. 12-13) do not "set forth in detail the reasons why a hearing … would be helpful to the Court" (S.D. Local Rule 7.1(b)(2)) and do not establish Plaintiff's conclusory proposition that "the Court's decision-making process would be significantly aided by oral argument" (DE 51, p. 13).

### CONCLUSION

For the foregoing reasons, and those argued in the City's Motion (DE 50), the City's Motion should be granted and Plaintiff's Third Amended Complaint (DE 48) should be dismissed.

Respectfully submitted this 4th day of August, 2022

/s/ Jeffery R. Lawley
Jeffery R. Lawley, Esq.
Florida Bar No.: 0596027
Email: jrl@bclmr.com
BILLING, COCHRAN, LYLES,
   MAURO & RAMSEY, P.A.
Las Olas Square, Suite 600
515 East Las Olas Boulevard
Fort Lauderdale, FL  33301
Tel: 954-764-7150
Fax: 954-764-7279
**Attorneys for Defendant, City of Fort Lauderdale**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of August, 2022, I electronically filed a true and correct copy of the foregoing document with the Clerk of the U.S. District Court for the Southern District of Florida by using the CM/ECF system with a copy being served electronically upon counsel of record for all parties appearing before the Court through the notices of filing generated by the CM-ECF system.

By: /s/ Jeffery R. Lawley
Jeffery R. Lawley, Esq.
Fla. Bar No. 0596027
jrl@bclmr.com